THOMAS A. WILLOUGHBY, State Bar No. 137597
JENNIFER E. NIEMANN, State Bar No. 142151
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1750
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
ppascuzzi@ffwplaw.com
jniemann@ffwplaw.com

Proposed Attorneys for Archer Norris, a Professional
Law Corporation, Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>ARCHER NORRIS, a Professional Law Corporation,<br><br>               Debtor-In-Possession. | CASE NO. 18-30924-HLB<br><br>Chapter 11<br><br>Preliminary Hearing:<br><br>Date:   August 29, 2018<br>Time:  9;00 a.m.<br>Place:  450 Golden Gate Avenue<br>          Courtroom 19<br>          San Francisco, CA 94102<br>Judge: Honorable Hannah L. Blumenstiel<br><br>Final Hearing:<br>        To Be Set |

**DECLARATION OF THOMAS A. WILLOUGHBY REGARDING DECLARATION OF DOUGLAS C. STRAUS IN SUPPORT OF DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO PAY PREPETITION WAGES, COMPENSATION AND EMPLOYEE BENEFITS**

I, Thomas A. Willoughby, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and a partner with Felderstein Fitzgerald Willoughby & Pascuzzi LLP ("Counsel" or "FFWP"), the proposed attorneys for the Arthur Norris, a Professional Law Corporation, the debtor and debtor in possession herein ("Archer Norris" or the "Debtor") in the in the above-described Chapter 11 case. If called as a witness, I would and could testify competently to the matters stated herein.

2. I attach as Exhibit 1, a draft declaration for what Mr. Douglas Straus is believed

FWP-1

-1-

WILLOUGHBY DEC RE STRAUS DECLARATION IN SUPPORT OF EMERGENCY MOTION FOR AUTHORITY TO PAY PREPETITION WAGES & COMPENSATION

Case: 18-30924   Doc# 11-2   Filed: 08/24/18   Entered: 08/24/18 11:42:15   Page 1 of 17

will testify to respecting the Motion for Authority to Pay Prepetition Payroll.

3. Mr. Straus is unavailable to review and execute this decoration prior to the filing. Archer Norris will file an original as soon as Mr. Straus is available, but reserves the right to modify it prior to filing.

I declare under penalty of perjury that the foregoing it true and correct. Executed on August 24, 2018, at Sacramento, California.

*/s/ Thomas A. Willoughby*
THOMAS A. WILLOUGHBY

FWP-1

-2-

WILLOUGHBY DEC RE STRAUS DECLARATION IN SUPPORT OF EMERGENCY MOTION FOR AUTHORITY TO PAY PREPETITION WAGES & COMPENSATION

Case: 18-30924    Doc# 11-2    Filed: 08/24/18    Entered: 08/24/18 11:42:15    Page 2 of 17

THOMAS A. WILLOUGHBY, State Bar No. 137597
JENNIFER E. NIEMANN, State Bar No. 142151
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1750
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
ppascuzzi@ffwplaw.com
jniemann@ffwplaw.com

Proposed Attorneys for Archer Norris, a Professional
Law Corporation, Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>ARCHER NORRIS, a Professional Law Corporation,<br><br>Debtor-In-Possession. | CASE NO. 18-30924-HLB<br><br>Chapter 11<br><br>Preliminary Hearing:<br><br>Date: August 29, 2018<br>Time: 9;00 a.m.<br>Place: 450 Golden Gate Avenue<br>Courtroom 19<br>San Francisco, CA 94102<br>Judge: Honorable Hannah L. Blumenstiel<br><br>Final Hearing:<br>To Be Set |

**DECLARATION OF DOUGLAS C. STRAUS IN SUPPORT OF DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO PAY PREPETITION WAGES, COMPENSATION AND EMPLOYEE BENEFITS**

I, Douglas C. Straus, declare as follows:

1. I am an attorney at law, duly licensed to practice in the State of California and am the President of Archer Norris, a Professional Law Corporation (the "Debtor"). I make this declaration in support of the Debtor's Emergency Motion for Authority to Pay Prepetition Wages, Compensation and Employee Benefits ("Motion"). All terms not otherwise defined shall have the same meaning as in the Motion.

2. All facts set forth in this Declaration are based on my personal knowledge, upon information supplied to me by people who report to me, upon information supplied to me by the

Debtor's professionals and consultants, upon my review of relevant documents, or upon my opinion based on my experience and knowledge with respect to the Debtor's operations, financial condition and related business issues. The documents submitted herewith, referenced herein or otherwise relied upon by me for purposes of this Declaration are the business records of the Debtor, prepared and kept in ordinary and regularly conducted business activity of the Debtor, and used by me for those purposes. If I were called upon to testify, I could and would testify competently to the facts set forth herein, and I am authorized to submit this Declaration on behalf of the Debtor.

3. On August 22, 2018 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California. No trustee, examiner or creditors' committee has been appointed in this chapter 11 case. The Debtor remains as Debtor in possession pursuant to 11 U.S.C. §§1107 and 1108.

4. The Debtor is a 70-lawyer litigation firm with four offices located in Walnut Creek, San Francisco, Newport Beach and Los Angeles. As of the Petition Date, the Debtor had approximately 60 non-lawyer employees. The Debtor was created in 2000 through a merger between two legacy Bay Area firms: Richmond, California-based Norris & Norris, founded in 1949, and Walnut Creek, California-based Archer, McComas, Breslin, McMahon & Chritton, founded in 1981.

5. Archer Norris filed this Chapter 11 case in conjunction with a Plan of Dissolution designed, among other things, to facilitate the wind down of its operations and the smooth transition of client matters to successor firms, with the goal being to minimize any harm to the client matters, which is anticipated to maximize the return to creditors. A true and correct copy of the Plan of Dissolution, which is attached to the voluntary petition, also is attached as Exhibit 1 to this Declaration. Several factors contributed to the need for Archer Norris to wind down its operations, including the departure of over 20 attorneys from Archer Norris' Newport Beach office in 2016, the loss of 10 additional partners since January 2017, and the firm not being as successful during the last few years as it once was.

6. Archer Norris' main creditor is the Bank, which is owed approximately $2.7 million under a line of credit and two equipment loans. The Bank asserts a blanket security interest in Archer Norris's personal property, including Archer Norris' rights of payment based on an agreement executed in October 2014.

7. Because this bankruptcy filing occurred near the end of a pay period, and because numerous employees have departed or are in the process of departing employment with the Debtor, Archer Norris proposes to pay pre-petition wages only for those employees who are still employed by the Debtor as of September 7, 2018 ("Remaining Employees"). The Debtor projects that it will have approximately $302,634 in accrued and unpaid pre-petition payroll that needs to be paid to Remaining Employees on September 7, 2018.

8. The Debtor believes that this payment will maintain morale given that employees will only have received payment for only post-petition wages on August 31, and receiving the second half of their paychecks will be a large inducement to stay and participate in the short wind down period.

9. As a result of the commencement of the Debtor's chapter 11 case, and in the absence of an order of the Court providing otherwise, the Debtor will be prohibited from paying or otherwise satisfying its pre-petition obligations to the Remaining Employees, including its obligations under various wage, salary, retirement, healthcare, and other benefit programs (collectively, the "Employee Obligations"). To maintain Remaining Employee morale at this critical time for the Debtor, and to minimize the personal hardship the Remaining Employees would suffer if pre-petition Employee Obligations, Employee Deductions and Employee Expenses are not paid or honored when due, the Debtor seeks authority to honor, in its discretion, such obligations, including those described above.

10. The Debtor's Remaining Employees are essential to the success of the wind down of its law firm. The cost of losing the Remaining Employees will outweigh the cost of honoring the pre-petition Employee Obligations. If such accrued obligations are not timely honored post-petition, the Debtor's Remaining Employees will suffer extreme hardship and may be unable to pay their daily living expenses. Likewise, it would be inequitable to require the Debtor's

Remaining Employees to bear personally any business expenses that were incurred on behalf of the Debtor with the expectation that they would be reimbursed.

11. Just before the Debtor's bankruptcy petition was filed, the Bank swept the Debtor's accounts, including funds held in the employee health flexible spending account as well as the employee commuter check account. The Debtor believes that both of these accounts are Employee Deductions, fall within Bankruptcy Code Sections 541(b)(7) or 541(d), and do not constitute property of the estate. The Debtor has requested that the Bank return those funds to their respective accounts, as they are not the Debtor's property and are not subject to the Bank's lien. In the event that request is not honored by the time of the hearing, I request that the Court authorize the Debtor to withhold any adequate protection payments and use such funds to replenish the employee funds.

I declare under penalty of perjury that the foregoing it true and correct. Executed on August __, 2018, at Walnut Creek, California.

_____
DOUGLAS C. STRAUS

# EXHIBIT 1

# PLAN OF DISSOLUTION OF DISSOLUTION OF
# ARCHER NORRIS, A CALIFORNIA PROFESSIONAL CORPORATION

I. <u>Immediate Dissolution Steps and Definitions</u>

    A.    Archer Norris, a Professional Corporation, is a California professional corporation engaged in the practice of law (the "Corporation" or the "Firm"). At a meeting of the shareholders of the Firm (the "Shareholders") held on August 22, 2018 (the "Effective Date"), Shareholders holding shares representing at least 75% acted voluntarily to wind up and dissolve the Corporation, (b) approved this plan of dissolution (the "Plan of Dissolution"), and (c) ratified and approved any and all prior actions of the Corporation's board of directors (the "Board"), its management committee (the "Management Committee"), and the Corporation's officers taken in furtherance of this Plan of Dissolution.

    B.    The Plan of Dissolution shall become effective as of the Effective Date.

    C.    The Plan of Dissolution has been designed to provide for the filing of a Chapter 7 or 11 bankruptcy case in order to facilitate the smooth transition of client matters to successor firms, with the goal being to minimize any harm to the client matters, which is anticipated to maximize the return to creditor, and an orderly winding up of the business and affairs of the Corporation.

    D.    The Firm will continue to provide client services from the Effective date until September 24, 2018 ("Client Service Deadline").

    E.    The Board has retained Felderstein Fitzgerald Willoughby & Pascuzzi LLP, a law firm to file the bankruptcy case, and BPM as consultants in the liquidation process, as well as other firms that have provided or may in the future provide more specific advice and guidance to the Corporation (the "Consultants").

    F.    Russ Burbank of BPM is hereby appointed to be the initial manager (the "Manager"), along with Jim Kentner as deputy manager (the "Deputy Manager") of the Corporation. The Management Committee and/or the Manager is expected to enter into agreements to retain the Manager and any other necessary employees and consultants to work for the Corporation, which agreements may provide for severance and/or bonuses upon completion of service.

    G.    The Manager or the Deputy Manager may resign at any time and/or may be removed from the position by the affirmative vote of a majority of the members of the Management Committee, for any or no reason. Any successor shall be appointed by a majority of the members of the Management Committee. Likewise, individual members of the Management Committee may resign at any time, and the remaining members of the Management Committee shall have all full authority of the Management Committee. If all the members of the Management Committee resign, the Manager, or if there is no Manager, the Deputy Manager, shall have all the authority of the Management Committee. The Shareholders may, but need not, appoint Shareholders to replace a vacant Management Committee seat, or if there are no members of the Management Committee, a Manager and/or a Deputy Manager.

    H.    The liquidation team shall consist of the Manager, Deputy Manager and the employees of the Firm retained to assist in the liquidation (the "Liquidation Team"). The Liquidation Team is responsible for the day-to-day operation of the Corporation-in-Dissolution, subject to the oversight and direction of the Management Committee and the assistance where requested of the Consultants.

I.      Any terms used but not defined herein shall have the meaning ascribed to such term in the various agreements, as amended, governing the Corporation (the "Governing Documents"). Upon the Effective Date, the provisions of the Plan of Dissolution will govern the operation of the firm as well as the Governing Documents and applicable law. If there is a conflict between the Plan of Dissolution and the Governing Documents, the Plan of Dissolution will control.

II.     The Wind Down Plan

   A.    Wind Down Prior to the Client Service Deadline:

      1.    The Corporation will continue to engage in the practice of law for existing clients until all the lawyers working on client matters, individually or in groups, shall have combined with or shall have joined other law firms or shall have opened new law offices, and the Corporation shall continue to operate in accordance with the Plan of Dissolution, the Governing Documents and applicable law, including but not limited to the provisions of the United States Bankruptcy Code.

      2.    While the Firm recognizes that Shareholders and other attorneys will be spending time negotiating with other law firms prior to the Client Service Deadline, it is important that they continue to fulfill their obligations to the Firm's clients, continue to bill for their time and continue to enter the time in the accounting system. The Liquidation Team is authorized to seek early termination of persons who fail to continue to work on behalf of the Corporation.

      3.    The Board and the Management Committee with the assistance of the Manager (defined below) shall be responsible, inter alia, for providing that each unfinished professional engagement or matter is assigned to another firm prior to the Client Service Deadline.

      4.    One of the essential elements of this Plan of Dissolution is to bill and collect outstanding work-in-process and accounts receivable. Billing and collection personnel will work with all the billing Shareholders to maximize the collection of work-in-process and accounts receivable. The Management Committee and the Manager will also review the status of all Alternate Fee Arrangements, negotiate for the transfer of such matters to other firms on such terms as they deem fair and reasonable.

      5.    Shareholders agree both prior to and after the Client Service Deadline to make themselves available as needed by the Manager to finalize any WIP into billings, and if necessary to work with the Corporation in Dissolution to resolve any issues with their clients respecting any billings, including assisting in any audit of a bill.

      6.    Each Shareholder is also responsible to ensure that all professional obligations to clients for whom he or she has been or is performing professional services are being satisfied appropriately.

      7.    It is expected that all lawyers and client matters will have left all Firm premises as of the close of business on September 15, 2018, unless a separate written agreement has been entered into with the Corporation allowing such lawyer(s) to remain. Shareholders last day of employment and physical departure from the Firm shall be on the Client Service Deadline. Except with the consent of the Manager, upon departing the Firm, a Shareholder shall no longer have access to Firm premises or resources.

8. The terms of Shareholder departures shall be in accordance with this Plan of Dissolution, not in accordance with the Governing Documents or the employment agreement with any Shareholder, and to the extent required, the Plan of Dissolution constitutes an amendment to the Governing Documents to provide for such change.

9. Shareholders are encouraged to help associates and staff find employment in connection with their new relocation and should keep the Manager informed of their progress.

B. Wind Down After the Client Service Deadline:

1. On and after the Client Service Deadline, the Corporation in dissolution (may be referred to herein as the "Corporation," "Firm" or the "Corporation-in-Dissolution") will continue to exist and to the extent that funds are available, will distribute such funds in accordance with Article III below.

2. To the extent that funds are not available for the wind down, the Management Committee and/or the Manager has the authority to either enter into an assignment for the benefit of creditors under applicable California law, or to convert a pending Chapter 11 case, or if no case has been filed, to file a Chapter 7 bankruptcy case.

3. The Manager and Deputy Manager shall serve in all respects subject to the supervision of, and shall report to, the Management Committee. The Management Committee may delegate to the Manager the same powers and authority which it has to wind-up the business and affairs of the Firm in accordance with the Plan of Dissolution, the Governing Documents and applicable law.

4. As consideration for those Shareholders who comply with their obligations set forth in this Plan of Dissolution including the responsibilities on Shareholders contained in Article II(A) herein (hereafter the "Final Day Shareholders") and together with the Liquidation Team, and the Management Committee who agree to serve after the Client Service Deadline (collectively the "Indemnified Parties"), they shall receive the following indemnifications and protections as consideration for their assistance in maximizing the value of the assets of the Corporation during the wind down period prior to and after the Client Service Deadline:

    a. The Indemnified Parties shall have no personal liability to the Corporation-in-Dissolution or the Shareholders for monetary damages for breach of his or their duties in such capacities, notwithstanding any provision of law imposing such liability, so long as he or they acted in a manner that did not constitute bad faith or willful misconduct. In the event of any change in any applicable law, statute or rule which narrows the right of a California professional corporation or the Corporation-in-Dissolution to limit the liability of the Manager, the members of the Management Committee, the Board and the other members of the Liquidation Team, this paragraph shall be construed so as to be enforceable to the maximum extent compatible with such law, statute or rule, as then in effect.

    b. The Corporation-in-Dissolution shall indemnify the Indemnified Parties to the extent and in the manner provided in Exhibit A attached.

3

c. The Management Committee is authorized in its discretion to establish an escrow fund in such amount as it deems reasonable to cover the costs of defense as well as the potential liabilities of any claim that has been brought or may be brought against any of the Indemnified Parties for which such Indemnified Parties may be entitled to indemnification hereunder.

d. In addition to, and not in limitation of, the rights of the Indemnified Parties to be indemnified by the Corporation-in-Dissolution, the Management Committee may as a wind down expense cause the Corporation-in-Dissolution to obtain and pay for insurance coverage for any acts or omissions in connection with the performance of their duties under the Plan of Dissolution, including the purchase of tail insurance.

e. Final Day Shareholders will be deemed by the Firm to have provided valuable services to the Firm in exchange for and this Plan of Dissolution shall act as a waiver of claims against Final Day Shareholders by the Firm, and also as an indemnity in favor Final Day Shareholders against the following types of claims brought by third parties, including any creditor, trustee or assignee for benefit of creditors under *Jewel v. Boxer,* to the extent that any such claims survived the recent California Supreme Court decision in Heller *v. Davis Wright Tremaine LLP* (March 5, 2018), all claims arising from the doctrine of *Jewel v. Boxer, 156 Cal. App. 3d 171 (1984)*, as applied to professional corporations in *Fox v. Abrams, 163 Cal. App. 3d 610 (Cal. Ct. App.1985)*, and the applicable sections of the Moscone-Knox Professional Corporations Act, and to the extent applicable the California Revised Uniform Partnership Act, including, but not limited to, the duty of loyalty to account to the Firm for future profits on work performed on continuing hourly rate legal matters transferred from the Firm to the Shareholders or successor law firms. Contingency or alternative billing matters are excluded from this release.

5. The costs and expenses of carrying out the wind-down and liquidation outlined in this Plan of Dissolution will be incurred on behalf of, and borne by, the Corporation-in-Dissolution.

6. This Plan of Dissolution contemplates the surrender of all Firm premises to its respective landlords as soon as practicable. Subject to the consent of holders of security interests therein, if any, the surrender may include fixtures other than fixtures which are personally owned by the Shareholders and employees of the Firm. It will be necessary for the Corporation-in-Dissolution to obtain such space as is reasonably necessary for use by the Liquidation Team in addition to physical and digital/electronic space for files and other records to be stored off-site.

7. The Firm believes that a limited number of employees will initially be required to implement the Plan of Dissolution. The Manager will have authority to hire, retain or terminate employees or independent contractors as the Manager deems appropriate. The Corporation-in-Dissolution will pay all amounts owed to employees in accordance with applicable law, including accrued and unused vacation time.

8. The Manager has the authority to modify or amend the frequency and timing of any employee pay schedule. Nothing in this Plan of Dissolution shall be construed as an undertaking or obligation to pay any amount to any employee except as required by law.

9.      The Corporation does not undertake to pay (although it reserves the right to pay) any amount in lieu of notice under the WARN Act. The Corporation does not believe its actions are subject to any California or federal WARN Acts for multiple reasons but it nonetheless intends to comply with those Acts to the maximum extent possible.

10.     Shareholders remaining on the Firm's premises subsequent to the Client Service Deadline, and actively engaged in performing and supervising necessary billable client work (or providing services at the request of the Manager) will, be compensated, on a weekly basis in arrears, an amount to be agreed upon with the Manager that fairly reflects the value being provided to the Corporation by such Shareholder(s). Any Shareholder desiring to remain in the Firm under the terms of this paragraph beyond the Effective Date shall require the approval of the Manager. The Manager and/or the Board shall have the authority to determine whether a Shareholder is entitled to compensation under the terms of this paragraph and, if so, to what extent.

11.     The Manager is authorized to implement a key employee retention plan (the "KERP") in order to retain the assistance of personnel who are necessary for the orderly implementation of this Plan of Dissolution. The Manager may determine the amount and terms of, and may amend or modify, the KERP, including increasing or decreasing the financial obligations of the Firm under the KERP.

III.    Plan of Dissolution General Liquidation Provisions and Powers

A.      The Manager with the oversite of the Management Committee is authorized from time to time to negotiate and to consummate existing transactions and sales of all or any portion or portions of the properties of the Corporation on such terms and conditions as they in their discretion shall deem beneficial to the Corporation, subject to any requisite approval or other action by the Management Committee of the Corporation, provided that the Management Committee may determine the fair market value of any non-cash assets for distribution to shareholders in lieu of cash;

B.      The Management Committee may from time to time authorize one or more distributions of property of the Corporation, in cash or in kind, in a series of distributions in complete liquidation to the Corporation's Shareholders, retaining such assets as they may deem necessary to meet claims or liabilities of the Corporation, and the operation and maintenance of such properties of the Corporation as have not been sold at the time of any such distributions;

C.      The Liquidation Team shall review and discuss any applicable tax liability. Payments will be made in accordance with the priority accorded such payments, including with respect to obligations to the United States, the provisions of 31 USC § 3713, *United States v. Estate of Romani*, 523 U.S. 517 (1998) (allows payment of secured claims prior to IRS); and *United States v. McNicol*, 829 F.3d 77 (1st Cir. 2016) (citing Internal Revenue Manual, 34.4.1.7 (Aug. 11, 2004) for the proposition that administrative expenses (such as "expenses incurred for the general welfare of creditors," "expenses incurred to collect and preserve assets," court costs, and funeral expenses may be paid prior to payments to the IRS). The Liquidation Team will work with and cooperate with the retirement trustees for any Corporation retirement plans, and shall assist in the wind up and distribution of funds in those plans to former employees as a wind down expense to the extent funds are available.

D.      After the provision for or payment of all known debts and liabilities of the Corporation, all of the remaining assets of the Corporation shall be distributed to the Shareholders in

5

proportion to their share ownership interests in the Corporation no later than the end of the tax year in which the payment of all known debts and liabilities of the Corporation have been paid (the "Final Tax Year");

      E.      The foregoing distribution in complete liquidation shall be in exchange solely for, and in complete redemption and cancellation of, and in payment for, all of the outstanding shares of the Corporation, and the Shareholders shall surrender their certificates for such shares to the Secretary concurrent with such final distribution;

      F.      This Plan of Dissolution is intended to accomplish the complete liquidation and dissolution of the Corporation in accordance with Section 331 of the Internal Revenue Code of 1986, as amended, and the regulations thereunder.

      G.      After the complete liquidation or assignment of all assets of the Corporation and to the extent that assets exist, upon the provision for or payment either in full or pro rata by order of priority under applicable law of all known debts and liabilities of the Corporation and after distribution, if any excess assets exsit, to Shareholders, the Manager, the Deputy Manager, and/or the Management Committee is authorized, and empowered to:

      1.      Execute and file, or cause to be filed, all documents which they deem necessary or advisable to carry out the purposes and intention of this Plan of Dissolution, including a Certificate of Dissolution under the laws of the State of California, information returns on United States Treasury Department Form 966, 1096, and 1099,

      2.      File any required final income tax returns and the information required by the Treasury Department and the Franchise Tax Board of the State of California; and

      3.      Proceed with the voluntary dissolution of the Corporation under the laws of the State of California.

This document may be signed in counterparts and any facsimile or copy is deemed the same as an original.

6

Case: 18-30924    Doc# 11-2    Filed: 08/24/18    Entered: 08/24/18 11:42:15    Page 13 of 17

Dated: August 22, 2018

_____
W. Eric Blumhardt

_____      *for* Colin Coffey
Colin J. Coffey                      *per authority*

_____
Sharon C. Collier

_____      *for* Chuck Diaz
Charles R. Diaz                      *per authority*

_____
Keith R. Gillette

_____
Nandor B. Krause

_____      *for* Mike Osborne
Michael C. Osborne

_____
William H. Staples

_____
Douglas C. Straus

_____      *for* KC Ward
Kenneth C. Ward                      *per authority*

_____
Stephen B. Welch

7

EXHIBIT A

INDEMNIFICATION

1. <u>Scope of Indemnification</u>.

(a) <u>Definitions</u>. The Definitions on the Plan of Dissolution will apply to these indemnification provisions to the Plan of Dissolution.

(b) <u>Third-Party Proceedings</u>. The Corporation-in-Dissolution shall indemnify the Indemnified Parties and each non-consultant, non-professional person acting on behalf of the Corporation-in-Dissolution at the request of and on the authority of the foregoing (each an "<u>Indemnitee</u>") if Indemnitee is or was a party to or participant in, or is threatened to be made a party to or participant in, any threatened, pending or completed action, arbitration, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation-in-Dissolution) (a) by reason of the fact that indemnitee is or was serving in such capacity under the Plan of Dissolution, or (b) by reason of any action or inaction, or alleged action or inaction, while acting in such capacity under the Plan of Dissolution, against all expenses (including without limitation attorneys' fees and all other costs, expenses and obligations incurred in connection with investigating, defending, being a witness in, or participating in (including on appeal), or preparing to defend, be a witness in or participate in, any action, arbitration, suit, proceeding, alternative dispute resolution mechanism, hearing, inquiry or investigation), damages, losses, costs, judgments, fines and amounts paid in settlement (if such settlement is approved by the Corporation-in-Dissolution, which approval shall not be unreasonably withheld or delayed) actually and reasonably incurred by indemnitee in connection with such action, arbitration, suit or proceeding ("Indemnifiable Expenses") so long as indemnitee acted in a manner that did not constitute bad faith or willful misconduct, and, with respect to any criminal action or proceeding, so long as Indemnitee believed in good faith that Indemnitee's conduct was lawful. The termination of any action, arbitration, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create presumption that Indemnitee acted in a manner that constituted bad faith or willful misconduct, or, with respect to any crimination action or proceeding, that indemnitee did not believe in good faith that Indemnitee's conduct was lawful. In the event of any dispute regarding whether the Indemnitee is entitled to indemnification hereunder, the party opposing the Indemnitee's claim for indemnification shall have the burden of establishing that the indemnitee acted in a manner that constituted bad faith or willful misconduct and, with respect to any criminal action or proceeding, that the indemnitee did not believe in good faith that Indemnitee's conduct was lawful.

(c) <u>Proceedings By or in the Right of the Corporation-in-Dissolution</u>. To the fullest extent permitted by applicable law, the Corporation-in-Dissolution shall indemnify Indemnitee if Indemnitee was or is a party to or participant in, or is threatened to be made a party to or participant in, any threatened, pending or completed action, arbitration or proceeding by or in the right of the Corporation-in-Dissolution to procure a judgment in its favor (a) by reason of the fact that indemnitee is or was serving in such capacity under the Plan of Dissolution, or (b) by reason of any action or inaction, or alleged action or inaction, on the part of indemnitee while acting in such capacity under the Plan of Dissolution, against all Indemnifiable Expenses if indemnitee acted in a manner that did not constitute bad faith or willful misconduct. In the event of any dispute regarding whether the Indemnitee is entitled to indemnification hereunder, the party opposing the Indemnitee's claim for indemnification shall have the burden of establishing that the Indemnitee acted in a manner that constituted bad faith or willful misconduct. If Indemnitee shall have been finally adjudicated by

8

court or arbitration order or judgment to be liable to the Corporation-in-Dissolution in respect of any claim, issue or matter, in the performance of Indemnitee's duty to the Corporation-in-Dissolution, Indemnitee shall nonetheless be entitled to indemnification hereunder unless and only to the extent that the court or arbitration panel in which such action or proceeding is or was pending shall determine that, in view of all the circumstances of the case, Indemnitee is not entitled to indemnity for Indemnifiable Expenses hereunder.

2. Expenses; Indemnification of Procedure.

(a) Advancement of Expenses. The Corporation-in-Dissolution shall advance all Indemnifiable Expenses incurred by Indemnitee from time to time upon request prior to the time required for payment. Indemnitee hereby undertakes to repay such amounts advanced only if, and to the extent that, it shall ultimately and finally be determined by court or arbitration order or judgment from which no further right of appeal exists that Indemnitee is not entitled to be indemnified by the Corporation-in-Dissolution as authorized hereby.

(b) Notice/Cooperation by Indemnitee. Indemnitee shall, as a condition precedent to his or her right to be indemnified under this Plan of Dissolution, give the Corporation-in-Dissolution notice in writing as soon as practicable of any claim made against Indemnitee for which indemnification will or could be sought hereunder. Notice to the Corporation-in-Dissolution shall be directed to the Board of Directors. In addition, Indemnitee shall give the Corporation-in-Dissolution such information and cooperation as it may reasonably require and as shall be within Indemnitee's power. Failure to give notice shall not relieve the Corporation-in-Dissolution of its obligation hereunder except to the extent the Corporation-in-Dissolution is materially prejudiced thereby.

(c) Procedure. Any indemnification and advances provided for in Section 1 and Section 2 of this paragraph "Indemnification" shall be made no later than 10 days after receipt of the written request of Indemnitee. If a claim under this Plan of Dissolution or under any statute is not paid in full by the Corporation-in-Dissolution within 10 days after a written request for payment thereof has first been received by the Corporation-in-Dissolution, Indemnitee may, but need not, at any time thereafter bring an arbitration action against the Corporation-in-Dissolution in accordance with the provisions set forth herein under the caption "Arbitration" to recover the unpaid amount of the claim and Indemnitee shall also be entitled to be paid for the expenses (including attorneys' fees) of bringing such action. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in connection with any action, suit or proceeding in advance of its final disposition) that Indemnitee has not met the standards of conduct which make it permissible under applicable law for the Corporation-in-Dissolution to indemnify Indemnitee for the amount claimed, but the burden of proving such defense shall be on the Corporation-in-Dissolution and Indemnitee shall be entitled to receive interim payments of expenses pursuant to Section 2(a) of this paragraph unless and until such defense may be finally adjudicated by court or arbitration order or judgment from which no further right of appeal exists. It is the parties' intention that if the Corporation-in-Dissolution contests Indemnitee's right to indemnification, the question of Indemnitee's right to indemnification shall be for the arbitration panel to decide, and neither the failure of the Corporation-in-Dissolution to have made a determination that indemnification of Indemnitee is proper in the circumstances because Indemnitee has met the applicable standard of conduct required by applicable law, nor an actual determination by the Corporation-in-Dissolution that Indemnitee has not met such applicable standard of conduct, shall create a presumption that Indemnitee has or has not met the applicable standard of conduct.

(d) <u>Obligation of the Corporation-in-Dissolution</u>. The indemnification obligations set forth in this paragraph "Indemnification" are the obligations of the Corporation-in-Dissolution and not of the Shareholders, individually or collectively and nothing in the Plan of Dissolution shall create any personal liability on any other party, including but not limited to the Indemnified Parties..

10