TIMOTHY S. LAFFREDI (WI SBN 1055133)
Assistant United States Trustee
TERRI HAWKINS DIDION (SBN 133491)
MARTA E. VILLACORTA (NY SBN 4918280)
Trial Attorneys
United States Department of Justice
Office of the U.S. Trustee
450 Golden Gate Avenue, Suite 05-0153
San Francisco, CA 94102
Telephone: (415) 252-2062
Facsimile: (415) 705-3379
Email: Marta.Villacorta@usdoj.gov

Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>ARCHER NORRIS,<br>A Professional Law Corp.,<br><br>       Debtor. | Case No. 18-30924 HLB<br><br>Chapter 11<br><br>Date: August 29, 2018<br>Time: 9:00 a.m.<br>Place: Honorable Hannah L. Blumenstiel<br>   450 Golden Gate Avenue<br>   Courtroom 19<br>   San Francisco, CA 94102 |

## THE UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO DEBTOR'S FIRST DAY MOTIONS [ECF NOS. 11 & 14]

Tracy Hope Davis, United States Trustee for Region 17 (the "United States Trustee"), hereby objects (the "Omnibus Objection") to the following first day motions (collectively, the "First Day Motions") filed by captioned debtor Archer Norris, a Professional Law Corporation (the "Debtor"): [1]

  (i) *Debtor's Emergency Motion for Authority to Pay Prepetition Wages, Compensation and Employee Benefits* (ECF No.[2] 11) ("Wages Motion"); and

---

[1] Hereafter, all references to "Section" in the Objection are to provisions of the "Bankruptcy Code," 11 U.S.C. §§ 101-1532, unless otherwise indicated. All references to "FRBP" are to the Federal Rules of Bankruptcy Procedure.

[2] "ECF No." refers the main bankruptcy docket for Archer Norris, Case No. 18-30924 HLB.

(ii) *Debtor's Emergency Motion For An Order Authorizing Interim and Final Use of Cash Collateral; Granting of Replacement Lien To MUFG Union Bank, N.A.; and Scheduling Final Hearing Pursuant To Bankruptcy Rule 4001* (ECF No. 14) ("Cash Collateral Motion").

The United States Trustee requests that the Court take judicial notice of the pleadings and documents filed in this case pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201. The United States Trustee reserves the right to supplement the facts contained herein, which are based solely on the factual assertions of the Debtor or its agents in the First Day Motions. To the extent that this Omnibus Objection contains factual assertions predicated upon statements made by the Debtor or its agents, the United States Trustee submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under Fed. R. Bankr. P. 9017 and Fed. R. Evid. 801(d)(2).

I. **INTRODUCTION**

The Debtor's requests for relief in the First Day Motions should either be (a) denied outright or (b) significantly limited by Court order solely to a level that it is absolutely necessary to sustain the Debtor's operations. As to each of the First Day Motions, the Debtor has failed to meet its evidentiary burden for the relief requested, thereby mandating denial of the Debtor's requests for relief at this early stage of the case. To date, Schedules or Statement of Financial Affairs have not been filed. An official committee of unsecured creditors has not been formed, and a 341 meeting of creditors has not been held. Therefore, the relief requested in the First Day Motions is premature and the Court should not grant final approval of the First Day Motions at this time. Based upon the representations in the First Day Motions, and in view of the proposed dissolution, by the Debtor's own admission there are concerns about the Debtor's solvency and ability to reorganize.

//

## II. STATEMENT OF FACTS

1. On August 22, 2018, the Debtor commenced the captioned case by filing a voluntary petition[3] for relief under chapter 11 of the Bankruptcy Code ("Petition Date") in conjunction with a plan of dissolution. ECF No. 1. On the same date, the Debtor filed its list of 20 largest unsecured creditors. *Id.*

2. The Debtor, however, has not filed its schedules of assets or liabilities or a statement of financial affairs as required to be filed under 11 U.S.C. § 521 and FRBP 1007, and as a result, the Court issued a notice of deficient filing requiring the Debtor to comply by September 5, 2018. ECF Nos. 5 and 6.

3. On August 24, 2018, the Debtor filed its First Day Motions, the Declarations of Douglas C. Straus (the "Straus Declaration") in support of the Wages Motion and Cash Collateral Motion and the Declaration of Russell K. Burbank (the "Burbank Declaration") in support of the Cash Collateral Motion. ECF Nos. 11, 13, 14 and 16. The Debtor also included a proposed Budget in support of the Cash Collateral Motion, which is attached as Exhibit A to the Burbank Declaration. ECF No. 14.

4. On August 28, 2018, at 1:00 p.m., the United States Trustee will hold a formation meeting to determine interest in forming a creditors' committee.

5. The Section 341 meeting of creditors is scheduled for September 25, 2018 at 10:00 a.m. *See* docket text entry dated August 22, 2018.

//

//

//

---

[3] Douglas C. Strauss signed the voluntary petition on behalf of the Debtor. However, all the subsequent filings refer to "Douglas C. Straus."

**First Day Motions**

6. The Debtor is a 70-lawyer litigation firm with four offices located in Walnut Creek, San Francisco, Newport Beach and Los Angeles. ECF No. 13, Straus Declaration, ¶ 4. As of the Petition Date, the Debtor had approximately 60 non-lawyer employees. *Id.*

7. Debtor filed this chapter 11 case in conjunction with a plan of dissolution designed, among other things, to facilitate the wind down of its operations and the smooth transition of client matters to successor firms. *Id.* at ¶ 5.

8. Debtor states it proposes to pay prepetition wages only for those employees who are still employed by the Debtor as of September 7, 2018 ("Remaining Employees"). *Id.* at ¶ 7. The Debtor projects that it will have approximately $302,634 in accrued and unpaid pre-petition payroll that needs to be paid to Remaining Employees on September 7, 2018. *Id.* However, no list of employees or precise amounts to be paid each of the Remaining Employees was attached to the Wages Motion. *See* ECF Nos. 11, 13. The Wages Motion also fails to address whether any of the Remaining Employees are insiders. *Id.* It also fails to address whether any of the Remaining Employees received notice of this bankruptcy case. *Id.*

9. Pursuant to the plan of dissolution, the Debtor anticipates that all lawyers and client matters will be transitioned to other law firms and will have left the firm's premises as of the close of business on September 14, 2018. ECF No. 16, Straus Declaration, ¶ 13. The Debtor also anticipates surrendering all of its leased premises to respective landlords as soon as possible, subject to Court approval. *Id.*

10. Prior to Petition Date, Debtor engaged Russell K. Burbank of BPM, LLP ("BMP") as its financial advisor[4] to prepare an analysis for Debtor's Board of Directors with

---

[4] To date, however, an application to employ BMP as the Debtor's financial advisor has not been filed with the Court. *See* bankruptcy docket for Archer Norris, a Professional Law Corporation, Case No. 18-30924 HLB.

respect to its ongoing financial performance and to try and work out with MUFG Union Bank, N.A. (the "Bank") to facilitate an orderly wind down. Burbank Declaration, ¶ 5. Burbank states that the Bank was unwilling to work with the Debtor to implement an orderly transition of client matters to successor firms, and as a result, the Debtor filed its chapter 11 case in order to implement its plan of dissolution. *Id.*

11. As of August 23, 2018, the Debtor's current cash totaled approximately $273,000, which consists of checks received after the Petition Date, plus anticipated funds to be received by the Bank. *Id.* at ¶ 7.

12. As of the Petition Date, the total collateral in accounts receivable subject to the Bank's asserted liens is approximately $7.6 million. *Id.* at ¶ 8.

13. The Debtor requests the Court authorize a replacement lien in favor of the Bank and authorize the use of cash collateral of the Bank on an interim basis through September 14, 2018, for necessary expenses in the amount of $556,676 plus a 10% variance, for the week ending August 31,2018; $395,974 plus a 10% variance for the week ending September 7, 2018; and $711,032 for the week ending September 14, 2018, plus a 10% variance pursuant to the proposed Budget attached as Exhibit A to the Burbank Declaration. *Id.* at ¶ 9.

14. In its Cash Collateral Motion, the Debtor requests a final hearing to be set for the week ending September 14, 2018, and a briefing schedule for approval of the final use of cash collateral through November 2, 2018. ECF No. 14, p. 2.

**III. JURISDICTION AND STANDING**

Under 28 U.S.C. § 586(a)(3), the United States Trustee is charged with supervising the administration of cases and trustees "by, whenever the United States trustee considers it to be appropriate" taking certain action. 28 U.S.C. §§ 586(a)(3)(A) – (I). This duty is part of the United States Trustee's responsibility to enforce the laws as written by Congress and interpreted

by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3rd Cir. 1994).

Under 11 U.S.C. § 307, the United States Trustee has standing to be heard and to object to the First Day Motions addressed herein. 11 U.S.C. § 307.

## IV. LEGAL ARGUMENT

**1. The Cash Collateral Motion Should Be Denied.**

Bankruptcy Code section 363(a) defines cash collateral as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents." 11 U.S.C. § 363(a). Section 362(c) of the Bankruptcy Code provides that:

> (c)(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless –
> (A) each entity that has an interest in such cash collateral consents; or
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 362(c)(2). Federal Rule of Bankruptcy Procedure 4001(b)(2) provides that a court may conduct a preliminary hearing on a motion for authority to use cash collateral, "but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2).

Here, the United States Trustee objects to the Cash Collateral Motion for the following reasons. First, based on the proposed Budget, the Debtor is projecting negative cash flow for the weeks ending August 31, 2018 and September 14, 2018; however, the proposed budget states that the cash balance on August 24, 2018 will be $313,000 (accounts receivable). *See* ECF No. 14. Absent the filing of Debtor's Schedules or other information, it is unclear whether the Debtor has the $313,000 to cover the negative cash flow for those weeks. *Id.* Indeed, as the Debtor explained in its Cash Collateral Motion, this chapter 11 case was filed in conjunction with a plan of dissolution designed to facilitate the wind down of its operations and the smooth transition of client matters to successor firms. ECF No. 16, Straus Declaration, ¶ 5.

6

Second, pursuant to the proposed Budget, there is a line item for a "Financial Consultant." While the Debtor explained in its Cash Collateral Motion that BMP was engaged as its financial advisor prior to the Petition Date, BMP has not been employed by the estate pursuant to section 327. *See* bankruptcy docket for Archer Norris, a Professional Law Corporation, Case No. 18-30924 HLB. However, to the extent the Court is inclined to enter an order granting the Cash Collateral Motion, it should state that payments may not be made to BMP absent the approval of its employment and a court order pursuant to sections 330 or 331.

Third, the proposed Budget failed to include a line item to ensure timely payment of quarterly fees due pursuant to 28 U.S.C. § 1930(a).

Fourth, any approval of the Cash Collateral Motion on an interim basis and proposed Budget by the Court, should not be construed as approval or endorsement of the Debtor's plan of dissolution.

Finally, the creditors' committee should be afforded an opportunity to review any cash collateral arrangements.

**2. The Wages Motion Should Be Denied.**

Section 507(a)(4) of the Bankruptcy Code grants priority to employee claims for wages, salaries, or commissions. The statute provides fourth priority for:

> allowed unsecured claims, but only to the extent of $12,850 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for – (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual . . .

*See* 11 U.S.C. § 507(a)(4).

Similarly, section 507(a)(5) of the Bankruptcy Code provides that employees' claims for contributions to certain employee benefit plans are also afforded priority unsecured status. Specifically, section 507(a)(5) provides fifth priority to claims for:

> allowed unsecured claims for contributions to an employee benefit plan-

(A) arising from services rendered within 180 days before the date of the filing of the petition or date of the cessation of the debtor's business, whichever occurs first; but only
(B) for each such plan, to the extent of –
  i. the number of employees covered by each such plan multiplied by $12,850; less
  ii. the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

*See* 11 U.S.C. § 507(a)(5).

Section 507(a) includes the maximum priority allowable per individual claimant, and any amount in excess of the statutory cap of $12,850 is required to be treated as a general unsecured claim. *See In re Powermate Holding Corp.*, 394 B.R. 765, 772-773 (Bankr. D. Del. 2008) ("Any pre-petition unsecured claim that does not receive priority status under 11 U.S.C. § 507 is a general unsecured claim which receives payment last under a plan of reorganization or liquidation. Such claims include . . . any amounts in excess of statutory caps under various priority subsections."); *see also In re First Magnus Fin. Corp.*, 390 B.R. 667, 672 (Bankr. D. Ariz. 2008) ("[M]ost bankruptcy courts . . . afforded them priority treatment under § 507(a), up to the amount of the statutory cap. Any excess, over the cap, was treated as an unsecured claim.").

Here, the Debtor impermissibly lumps all the Remaining Employees' claims together into a single bucket and states that it will have approximately $302,634 in accrued and unpaid pre-petition payroll that needs to be paid to the Remaining Employees on September 7, 2018. The Debtor, however, has provided no list of employees or precise amounts to be paid each of the "Remaining Employees." *See* ECF Nos. 11, 13. The Straus Declaration filed in support of the Wages Motion fails to address whether any of the employees requested to be paid are insiders. *Id.* It also fails to address whether any of the Remaining Employees received notice of this bankruptcy case. *Id.* The Straus Declaration also fails to supply sufficient information regarding the nature of the employment relationship. The only information provided is that: (1) the Debtor is a 70-lawyer litigation firm; (2) as of the Petition Date it had approximately 60 non-lawyer employees; and (3) Debtor proposes to pay pre-petition wages only for those employees who are still employed

as of September 7, 2018. ECF No. 13, Straus Declaration, ¶¶ 4, 7. Additionally, the Debtor has failed to file all the required Schedules and Statement of Financial of Affairs.

Moreover, the United States Trustee also objects to the relief requested in the Wages Motion to the extent that any of the payments contemplated by the motion either exceed the aggregate cap set forth in Sections 507(a)(4) and 507(a)(5) or constitute impermissible transfers or obligations prohibited under Section 503(c) for each of the Remaining Employees. Debtor's request to approve expense reimbursements to employees should also be denied to the extent they implicate Section 503(c).

Furthermore, as discussed above, the Debtor appears to be administratively insolvent. Therefore, on this record, the Wages Motion should be denied.

## V. CONCLUSION

WHEREFORE, the United States Trustee requests that the Court enter an order denying the First Day Motions, and granting such other relief as is just and appropriate under the circumstances. In the event that the Court grants interim relief on the First Day Motions, the United States Trustee reserves the right to object to final relief and cross-examine witnesses at an evidentiary hearing.

Dated: August 28, 2018

TRACY HOPE DAVIS
UNITED STATES TRUSTE

/s/*Marta E. Villacorta*
Marta E. Villacorta
Trial Attorney