JEFFER MANGELS BUTLER & MITCHELL LLP
ROBERT B. KAPLAN, P.C. (Bar No. 76950)
rbk@jmbm.com
Two Embarcadero Center, 5th Floor
San Francisco, California 94111-3813
Telephone:   (415) 398-8080
Facsimile:   (415) 398-5584

Attorneys for MUFG UNION BANK, N.A.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re

ARCHER NORRIS, a Professional Law Corporation,

        Debtor-in-Possession.

Case No. 18-30924-HLB

Chapter 11

**OPPOSITION TO: (1) DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM AND FINAL USE OF CASH COLLATERAL; (1) GRANTING OF REPLACEMENT LIENS TO MUFG UNION BANK, N.A. AND SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001; AND (2) DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO PAY PRE-PETITION WAGES, COMPENSATION AND EMPLOYEE BENEFITS**

Date:    August 29, 2018
Time:   9:00 a.m.
Place:  450 Golden Gate Avenue
        Courtroom 19
        San Francisco, CA 94102
Judge:  The Hon. Hannah L. Blumenstiel

      MUFG Union Bank, N.A. ("Bank") hereby files its opposition ("Opposition") to the following Motions filed by Archer Norris, a Professional Law Corporation ("Debtor" or "Borrower"):  (1) Debtor's Emergency Motion for an Order Authorizing Interim and Final use of Cash Collateral; Granting of Replacement Liens to MUFG Union Bank, N.A. and Scheduling

Final Hearing Pursuant to Bankruptcy Rule 4001 ("Cash Collateral Motion"); and (2) Debtor's Emergency Motion for Authority to Pay Pre-Petition Wages Compensation and Employee Benefits ("Employee Benefit Motion"). The Bank hereby advises the Court that the Bank and the Debtor continue to negotiate with respect to various issues raised by the Motions and therefore the possibility exists that the various objections set forth below may be rendered moot by the time of the hearings on the Motions.

## STATEMENT OF FACTS

As is more specifically set forth in the accompanying Declaration of M. David Dinges, the Debtor is indebted to the Bank pursuant to the terms of three Term Notes, one Revolving Line of Credit Note and a Commercial Credit Card Agreement which have a total unpaid principal balance of $3,015,028.75 plus accruing interest, attorneys' fees and costs.

The Debtor's Cash Collateral Motion predictably, but inaccurately, seeks to blame the Debtor's Chapter 11 filing on actions taken by the Bank. In reality, the Debtor's Chapter 11 filing was precipitated as a result of its failure to approach the Bank on or shortly after July 16, 2018, at the time it first became aware it was experiencing severe financial problems and when the Debtor retained Russ Burbank and BPM as a financial advisor. Notwithstanding the foregoing, the Debtor did not contact the Bank until August 13, 2018, four weeks later, to advise the Bank that it was having severe financial problems and was contemplating winding up its operations and dissolving. The Cash Collateral Motion fails to explain why the Debtor delayed in so advising the Bank.

Additionally, on August 16, 2018, the Debtor requested the Bank consent to a 13 week forecast budget which, among other things, required the Bank pay the equity partners $138,000 per week ending on August 17, August 31 and September 14, 2018 that would serve as the basis, in part, of a consensual liquidation plan. The Bank advised the Debtor that any long term liquidation plan needed to exclude payroll to the Debtor's equity partners, which the Debtor then advised the Bank was unacceptable. It is significant to note, that the cash collateral budget (the "Proposed Budget") attached as Exhibit A to the Declaration of Russell K. Burbank in Support of Debtor's Emergency Motion for an Order Authorizing Interim and Final Use of Cash Collateral;

Granting of Replacement Lien to MUFG Union Bank, N.A. and Scheduling Final hearing Pursuant to Bankruptcy Rule 4001[Document No. 14-2] filed on August 24, 2018 does **not** include any payments by the Debtor to its equity partners.

Additionally, the Memorandum of Points and Authorities in Support of Emergency Motion for Authority to Pay Pre-Petition Wages, Compensation and Employee Benefits [Document No. 11-1] filed on August 24, 2018 further attempts to cast aspersions on the Bank's conduct by claiming that the Bank knowingly swept (<u>i.e.</u>, exercised its rights as a secured creditor) the Debtor's accounts "including funds held in employee health flex and spending accounts as well as the employee commuter check account" which did not constitute estate property. The true facts are that these accounts were opened by the Debtor in the name of the Debtor and not as employee trust accounts or in any other manner to indicate that the monies deposited in the accounts were not property of the Debtor. The Debtor's counsel first provided the Bank with detailed information about the deposits made in these accounts on Friday, August 24, 2018 and on Monday, August 27, 2018, the Bank agreed to reverse the sweep carried out of these accounts.

Finally, notwithstanding the fact that the Bank was not obligated to do so, prior to the hearing date on the Cash Collateral Motion, the Bank consented that Debtor could use cash collateral in an amount not to exceed $350,000 in order to fund the Debtor's payroll account for payroll the Debtor needs to pay on August 31, 2018, and use cash collateral in an amount not to exceed $48,390 to reimburse shareholders for post-petition credit card charges for the Debtor's business purposes and to pay out-of-pocket advances Debtor needs to pay for filing fees, court reporters, expert witnesses and the like, subject to the condition that the Cash Collateral Motion be granted with a cash collateral order reasonably satisfactory to the Bank, containing the usual protections afforded to secured creditors.

### THE BANK'S OBJECTIONS TO THE DEBTOR'S CASH COLLATERAL MOTION

The Bank objects to the Cash Collateral Motion on the following grounds:

1. The Motion seeks interim and final approval of the Proposed Budget and requests that the Court set a final hearing on the Cash Collateral Motion at a date to be set in September of 2018. It is the Bank's experience that the collection of accounts receivables from a law firm that is

Case: 18-30924   Doc# 25   Filed: 08/28/18   Entered: 08/28/18 15:42:56   Page 3 of 6

OPPOSITION TO: (1) DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING ETC.

in dissolution and is winding down is highly unpredictable at best. Therefore the Bank believes it is appropriate that a continued interim hearing be set on the Cash Collateral Motion in early October, at which time the Debtor should provide creditors with a new cash collateral budget with new cash receipt and disbursement projections based upon the Debtor's real world experience during the months of August and September 2018. The Bank seeks little point in the Court approving the Proposed Budget through November 2, 2018 at this early stage in the Debtor's Chapter 11 case, since such budget would, in the Bank's view, be nothing more than a guesstimate.

2. The Proposed Budget contemplates a payment of $50,000 to "Bankruptcy Counsel" for the week ending September 21, 2018, and a payment of $20,000 to the Debtor's "Financial Consultant" for the week ending August 31, 2018, and payments of $15,000 per week thereafter through and including the week ending November 2, 2018. To date, the Debtor has not filed an application to retain a "Financial Consultant", and the Debtor's proposed bankruptcy counsel has not yet filed an application to be retained. Moreover, unless the Court orders otherwise, fee applications of professionals for payment may not be filed more than once every 120 days after an order for relief has been entered. 11 U.S.C. § 331. Under authority of In re Knudsen Corp. (9th Cir. BAP 1988) 84 B.R. 668, 672-673, the Court can authorize the filing of fee applications more often than 120 days and establish procedures for enabling bankruptcy professionals to be paid without court approval, subject to various conditions for the disgorgement of professional fees paid which are not ultimately approved. Until the retention of the Debtor's professionals are approved by this Court and the Court enters, if appropriate, orders permitting professionals to be paid on a weekly basis, the Bank objects to these various line items set forth in the Proposed Budget.

3. The proposed form of Order attached to the Debtor's Cash Collateral Motion [Document No. 14, pages 8 and 9] ("Proposed Order") does not provide adequate protection to the Bank, as is required in order for the Debtor to use cash collateral (11 U.S.C. § 363(e); In re Center Wholesale, Inc. (9th Cir. 1986) 788 F.2d 541, 544; In re Sunnymead Shopping Center Company (9th Cir. BAP 1995) 178 B.R. 809, 814) for the following reasons:

    a. Although the Budget provides for certain principal and interest payments to

OPPOSITION TO: (1) DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING ETC.

be paid to the Bank, the Proposed Order does not set forth the specific date on which such payments are required to be made;

      b.      The Proposed Order does not contain any provisions to provide reporting to the Bank on a weekly basis of the Debtor's outstanding accounts receivables, post-petition date accounts payables and work in process for the preceding week and a report showing any variance between the Proposed Budget and the actual expenditures made by the Debtor of cash collateral for the preceding week. It should be noted that this Court's Guidelines for Cash Collateral and Financing Motions and Stipulations ("Guidelines") provide in Section F.5 for "reasonable reporting requirements";

      c.      The Proposed Order does not contain any default provisions which typically state that the Debtor's right to use cash collateral will cease upon reasonable notice if the Debtor fails to comply with the proposed Order. Once again, such a provision is consistent with the Guidelines in Section F. 1;

      d.      The Proposed Order makes no mention of the fact that the Debtor is establishing a cash collateral account and that the Bank is authorized to debit the cash collateral account without further order of the Court for payment of the adequate protection payments authorized in the Proposed Budget;

      e.      The Proposed Order does not provide reservation of rights to the Bank under Bankruptcy Code § 507(b), as contemplated in Section F.4 of the Guidelines;

      f.      The Proposed Order does not waive the Debtor's right to surcharge the Bank's collateral under Bankruptcy Code § 506(c) while the Debtor is authorized to use the Bank's cash collateral, as provided for in the Section E.4 of the Guidelines; and

      g.      The replacement lien provided for in the Proposed Order is inconsistent with Section F.2 of the Guidelines, in that it must provide that such "lien is subordinated to the compensation and expense reimbursement (excluding professional fees) allowed to any trustee thereafter appointed" in the Debtor's case.

4.      While, and as noted above, as of the time of the filing of this Opposition, the Bank and the Debtor continue to negotiate the Debtor's proposed use of cash collateral, to the extent

5

Case: 18-30924   Doc# 25   Filed: 08/28/18   Entered: 08/28/18 15:42:56   Page 5 of 6

OPPOSITION TO: (1) DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING ETC.

those negotiations are not successful, the Bank respectfully requests that the Proposed Order be modified to provide adequate protection to the Bank as requested above.

### EMPLOYEE BENEFIT MOTION

The Bank has no objection to the granting of the Employee Benefit Motion, subject to the condition that the Proposed Order be modified to provide adequate protection to the Bank as requested above.

DATED: August 28, 2018　　　　JEFFER MANGELS BUTLER & MITCHELL LLP

By: _____/s/ Robert B. Kaplan_____
　　　　ROBERT B. KAPLAN
　　Attorneys for MUFG UNION BANK, N.A.

OPPOSITION TO: (1) DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING ETC.